## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BOBBIE MOSS** )<br>    **1200 Mississippi Avenue** )<br>    **Apt. 215** )<br>    **Washington, D.C. 20032** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**WASHINGTON METROPOLITAN** )<br>**AREA TRANSIT AUTHORITY** )<br>    **600 Fifth Street, N.W.** )<br>    **Washington, D.C. 20001** )<br>)<br>    **Serve: Patricia Lee, Esquire** )<br>           **General Counsel, WMATA** )<br>           **600 Fifth Street, N.W.** )<br>           **Washington, D.C. 20001** )<br>)<br>    **Defendant.** ) | **Case No.** _____ |

## COMPLAINT AND JURY DEMAND

COMES NOW Plaintiff Bobbie Moss and for her Complaint against Defendant Washington Metropolitan Area Transit Authority ("WMATA") states as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction in this Court is founded on the Washington Metropolitan Area Transit Authority Compact (the "Compact"), which establishes original jurisdiction in this Court over WMATA matters pursuant to the Compact, Art. III § 4 and Art. XVI § 81, adopted in the District of Columbia Code at § 9-1107.10.

2.      Venue in this action properly lies in the United States District Court for the

District of Columbia pursuant to 28 U.S.C. § 1391, insofar as WMATA is located in this federal

judicial district.

## PARTIES

3.      Plaintiff Bobbie Moss (hereinafter "Plaintiff") is an adult citizen of the District of

Columbia, residing at 1200 Mississippi Avenue, Apt. 215, Washington, D.C. 20032.

4.      Defendant WMATA (hereinafter "Defendant" or "WMATA"), created effective

February 20, 1967, is an interstate compact agency and, by the terms of its enabling legislation,

is an agency and instrumentality of the District of Columbia, State of Maryland, and

Commonwealth of Virginia.

5.      At all relevant times, WMATA was the owner of the transit bus being operated by

its employee bus driver ("the Bus Operator").  At all relevant times, the Bus Operator was acting

in the course and scope of his employment and/or agency with WMATA, thereby rendering

WMATA vicariously liable for all of his tortious acts and omissions in causing Plaintiff's

injuries.  WMATA is also liable for the Bus Operator's tortious acts and omissions pursuant to

Article XVI § 80 of the Compact and pursuant to WMATA's June 15, 2006, Revised

Indemnification Policy, Resolution Number 2006-32.

## FACTS

6.      On November 2, 2017, at approximately 5:00 p.m., Plaintiff (an almost 60-year-

old woman who had recently underwent a left knee replacement and was using a cane to assist

with ambulation) was traveling on WMATA Metrobus Number 7156 (the "Bus") which was

heading southbound on 25th Street, S.E., in Washington, D.C.

7.     In the area the Bus was proceeding prior to the incident, 25th Street, S.E. there is one lane of traffic going northbound and one lane of traffic going southbound, with room for vehicles to park on the street adjacent to each lane of traffic respectively.

8.     Around the area of the incident, 25th Street, S.E. is also curved.

9.     For unknown reasons, the Bus Operator crossed the center line, pulling the Bus from the southbound lane of 25th Street, S.E. into the opposing northbound lane of traffic on 25th Street, S.E.

10.    The Bus Operator took this action around the curved area of 25th Street, S.E.

11.    This negligent, reckless, and illegal action placed the Bus and all of its passengers into oncoming traffic headed northbound on 25th Street, S.E.

12.    Another vehicle, legally proceeding in the northbound lane of traffic on 25th Street, S.E, approached the Bus, which was in the wrong lane of travel.

13.    The Bus Operator could not see the oncoming vehicle due to the Bus being in the wrong lane of traffic and the curve on 25th Street, S.E.

14.    Suddenly and without warning, the Bus Operator violently slammed on the Bus' brakes and jerked the Bus back into the southbound lane of traffic on 25th Street, S.E.

15.    This action would not have been necessary but for the Bus Operator negligently, recklessly, and illegally proceeding in the opposite lane of traffic on 25th Street, S.E.

16.    As a direct and proximate result of the Bus Operator's unnecessary, unusually sudden, and violent maneuver back into the southbound lane of traffic on 25th Street, Plaintiff was thrown from her seat and slammed into a metal box on the bus.

17.    The entire incident was captured on the Bus' own camera system.

3

18.   After striking the metal box, Plaintiff was able to get back into her seat but was experiencing extraordinary pain in her left shoulder, neck, back, and knees.

19.   The Bus continued the short drive to the Southern Avenue Metro Station, where emergency responders from the Prince George's County Fire Department were waiting to evaluate Plaintiff.

20.   After an initial evaluation, emergency responders transported Plaintiff to the emergency room at United Medical Center by ambulance, where she was treated for injuries suffered as a direct and proximate result of the Bus Operator's negligence as aforesaid.

21.   As a direct and proximate result of the Bus Operator's negligence, Plaintiff sustained serious and permanent injuries including, *inter alia*, injuries to her left shoulder, knees, back, and neck, which required extensive medical treatment, including, but not limited to, two surgeries, the placement of surgical hardware, and extensive physical rehabilitation. To date, Plaintiff has incurred over $200,000.00 in incident-related medical expenses as a result of the Bus Operator's negligence.

22.   At no time did Plaintiff act in a negligent manner, nor did she assume any risk.

23.   At the time of the incident, the Bus Operator was an agent and/or employee of Defendant and was operating the Bus within the course and scope of his employment and/or agency with Defendant, which is vicariously liable and otherwise legally responsible for his actions.

24.   At the time of the incident, the Bus Operator was operating the Bus with the consent of Defendant.

4

## COUNT I
### (Negligence and Negligence Per Se)

25.     The preceding paragraphs are incorporated by reference as though fully set forth herein.

26.     Plaintiff brings this claim for her individual injuries suffered as a result of Defendant's negligence and negligence *per se*.

27.     All acts and omissions of Defendant's agent, servant, and/or employee, the Bus Operator, were carried out within the scope of his employment and/or agency while performing a proprietary function as an employee of WMATA, rendering WMATA legally and statutorily liable.

28.     The aforesaid incident was caused by and was the direct, sole, and proximate result of the negligence of Defendant's agent, servant, and/or employee.

29.     Defendant, through its agent, servant, and/or employee, had a duty of care to operate the Bus in a proper fashion with the degree of care and skill that a reasonably competent driver would have exercised under similar circumstances.

30.     Defendant, through its agent, servant, and/or employee, breached the aforesaid duties of care, breached the applicable standards of care, and was negligent and/or negligent *per se* in the following ways, *inter alia*:

(a)     Failure to ensure the safety of its passenger, Plaintiff;

(b)     Failure to pay full time and attention to the operation of the Bus;

(c)     Failure to maintain proper control of the Bus;

(d)     Operating and maintaining an unsafe and hazardous bus service environment;

(e)     Failure to operate the Bus safely;

(f)     Failure to warn Plaintiff;

(g)     Failure to keep a proper lookout;

(h)     Creating an unreasonable risk of harm to the Bus' passengers;

(i)     Unnecessarily and unsafely operating the Bus in the opposite lane of traffic;

(j)     Suddenly and violently braking the Bus;

(k)     Suddenly and violently maneuvering the Bus;

(l)     Failure to adhere to the below-described WMATA SOPs, which reflect applicable national standards of care; and

(m)     Violating the below-listed statutes and regulations then and there in full force and effect in the District of Columbia without explanation.

31.     At all relevant times herein, there was in effect in the District of Columbia 18 D.C.M.R. § 2213.4, which provides: "An operator shall, when operating a vehicle, give full time and attention to the operation of the vehicle."

32.     18 D.C.M.R. § 2213.4 was enacted to prevent the type of incident that occurred (and to protect persons such as Ms. Moss), and neither WMATA nor the Bus Operator can offer an explanation as to the Bus Operator's violation of such regulation, thereby rendering WMATA negligent *per se* (*i.e.*, as a matter of law).

33.     At all relevant times herein, there was in effect in the District of Columbia D.C.M.R. § 2202.3(a) which requires that: "No vehicle shall at any time be driven to the left side of the roadway under the following conditions: (a) When approaching the crest of a grade or upon a curve in the highway where the driver's view is obstructed within such distance as to create a hazard if another vehicle approaches from the opposite direction."

34.     18 D.C.M.R. § 2202.3(a) was enacted to prevent the type of incident that occurred (and to protect persons such as Ms. Moss), and neither WMATA nor the Bus Operator can offer

an explanation as to the Bus Operator's violation of such regulation, thereby rendering WMATA negligent *per se* (*i.e.*, as a matter of law).

35.     At all relevant times herein, there was in effect in the District of Columbia D.C.M.R. § 2202.7 which requires that: "No vehicle shall be driven to the left side of the center of the roadway while overtaking and passing another vehicle proceeding in the same direction unless the left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit the overtaking and passing to be completed without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken."

36.     18 D.C.M.R. § 2202.7 was enacted to prevent the type of incident that occurred (and to protect persons such as Ms. Moss), and neither WMATA nor the Bus Operator can offer an explanation as to the Bus Operator's violation of such regulation, thereby rendering WMATA negligent *per se* (*i.e.*, as a matter of law).

37.     At all relevant times herein, there was in effect in the District of Columbia D.C.M.R. § 2201.6(a) which requires that: "Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all other rules consistent with this subtitle shall apply: (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that such movement can be made with safety."

38.     18 D.C.M.R. § 2201.6(a) was enacted to prevent the type of incident that occurred (and to protect persons such as Ms. Moss), and neither WMATA nor the Bus Operator can offer an explanation as to the Bus Operator's violation of such regulation, thereby rendering WMATA negligent *per se* (*i.e.*, as a matter of law).

39.     At all relevant times herein, the Bus Operator was required to comply with WMATA's "Metrobus Standard Operating Procedures," dated December 2013 ("WMATA SOPs").

40.     According to the Preface of the WMATA SOPs, "The [WMATA Standard Operating] procedures were developed, revised and updated by the Metrobus Safety and Training Staff in the Department of Bus Service at the Washington Metropolitan Area Transit Authority. Our Standard Operating Procedures are the product of extensive research and numerous years of bus operating experience."

41.     Additionally, according to the Preface of the WMATA SOPs: "Adherence to the rules set forth in [the WMATA SOPs] is required of all personnel working in and around the bus system and will enable us to continue to provide the safest and most reliable system possible."

42.     At all relevant times herein, WMATA SOP 6.5, under the heading "Changing Lanes, Passing and Being Passed; Procedures," required the following of the Bus Operator while operating the Bus around the time of the incident: "Unless otherwise directed, buses are to be operated in the right curb lane or the right traffic lane."

43.     At all relevant times herein, WMATA SOP 6.5.2, under the heading "Changing Lanes, Passing and Being Passed; Procedures; Changing Lanes," required, around the time of the incident, that the Bus Operator "Be certain that the lane you intend to move into is clear and will remain clear."

44.     At all relevant times herein, WMATA SOP 6.5.3, under the heading "Changing Lanes, Passing and Being Passed; Procedures; Changing Lanes," required, around the time of the incident, that the Bus Operator "Observe traffic ahead and in the adjacent space to maneuver the bus."

45.     At all relevant times herein, WMATA SOP 6.5.5, under the heading "Changing Lanes, Passing and Being Passed; Procedures; Changing Lanes," required, around the time of the incident, that the Bus Operator "Place [his] foot on the brake pedal while making observations and control speed of the bus prior to and when changing lanes. This is to avoid interfering with movement of vehicles in the lane the bus intends to move."

46.     At all relevant times herein, WMATA SOP 6.5.10, under the heading "Changing Lanes, Passing and Being Passed; Procedures; Passing Parked Vehicles or Fixed Objects," required the following of the Bus Operator while operating the Bus around the time of the incident: "If passing requires crossing the center line, be certain that the bus will not come into contact with oncoming vehicles."

47.     At all relevant times herein, WMATA SOP 6.5.12, under the heading "Changing Lanes, Passing and Being Passed; Procedures; Passing Vehicles Moving in the Same Direction," required the following of the Bus Operator while operating the Bus around the time of the incident: "The passing maneuver must not interfere with vehicles moving in the opposite direction."

48.     At all relevant times herein, WMATA SOP 6.5.26, under the heading "Changing Lanes, Passing and Being Passed; Procedures; Passing Vehicles Moving in the Opposite Direction," required, around the time of the incident, that the Bus Operator "Stay to the right of center line."

49.     At all relevant times herein, WMATA SOP 3.5, under the heading "Observations; Procedures," required, around the time of the incident, that the Bus Operator observe "every person, object or vehicle within the traffic pattern."

50.     At all relevant times herein, WMATA SOP 3.5.12, under the heading "Observations; Procedures; Environmental Blind Spots" required, around the time of the incident, that the Bus Operator "Be aware that other blind spots can be caused by signs, bushes, trees, buildings and walls."

51.     The Bus Operator violated, *inter alia*, all of the above-listed WMATA SOPs, which reflect the applicable national standards of care, in causing the incident.

52.     Plaintiff's personal injuries were a direct and proximate result of the aforesaid wrongful acts and neglect of Defendant's agent, servant and/or employee.

53.     Plaintiff acted properly in all respects and was free from negligence in connection with this incident.

54.     As a direct and proximate result of the aforesaid wrongful acts and neglect of Defendant's agent, servant and/or employee, Plaintiff sustained serious and permanent injuries including, *inter alia*, injuries to her left shoulder, knees, back, and neck, which required extensive medical treatment, including, but not limited to, two surgeries, the placement of surgical hardware, and extensive physical rehabilitation.

55.     As a direct and proximate result of the aforesaid wrongful acts and neglect of Defendant's agent, servant and/or employee, Plaintiff has incurred over $200,000.00 in incident-related medical expenses to date and will incur additional incident-related medical expenses in the future.

56.     As a further direct and proximate result of the negligent acts and omissions of Defendant's agent, servant, and/or employee, Plaintiff incurred lost wages and a loss of earnings capacity.

57.     As a further direct and proximate result of Defendant's negligent acts, Plaintiff suffered and will continue to suffer intense physical and emotional pain and suffering.

58.     As a further direct and proximate result of Defendant's negligent acts, Plaintiff was and continues to be, prevented from pursuing her normal routine and customary activities.

59.     For such injuries proximately resulting from Defendant's negligent conduct, Defendant is liable to Plaintiff for compensatory damages in the amount of Two Million Dollars ($2,000,000.00), which amount shall be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against the Defendant, as follows: (1) compensatory damages in the amount of Two Million Dollars ($2,000,000.00), which shall be proven at trial; (2) pre- and post-judgment interest; (3) costs; and (4) such other and further relief as this Court may deem just and proper.

## JURY TRIAL REQUESTED

Plaintiff, by counsel, respectfully requests a trial by jury on all issues.

Respectfully submitted,

BOBBIE MOSS

By:     Kenneth J. LaDuca, D.C. Bar #1031173
        GRENIER LAW GROUP PLLC
        1920 L Street, N.W., Suite 750
        Washington, D.C. 20036
        kladuca@grenierlawgroup.com
        Tel: (202) 768-9600
        Fax: (202) 768-9604

Dated: January 7, 2020